Maurice B. VerStandig, Esq.
Bar No.: MD18071
THE BELMONT FIRM
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
E-Mail: mac@dcbankruptcy.com
*Counsel for the Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | Case No.: 22-238-ELG |
| MUSE THREADS, Inc., | Chapter 11 |
| | (Subchapter V) |
| Debtor. | |

## REPLY TO OBJECTION OF 8FIG, INC. TO
## SECOND AMENDED PLAN OF REORGANIZATION

Comes now Muse Threads, Inc. (the "Debtor"), by and through undersigned counsel, and in reply to the Objection of 8fig, Inc. to Second Amended Plan of Reorganization (the "Objection," as found at DE #82, with the underlying plan being known as the "Plan," as found at DE #76, and the objecting party being known as "8fig") states as follows:

### I.      Introduction

8fig transferred $45,000.00 to the Debtor pre-petition and, by way of mutually-acknowledged error, an additional $30,000.00 post-petition, for a total of $75,000.00. Based on these transactions, 8fig now claims an entitlement to $117,695.05 and expresses its outrage that the Debtor has suggested, in the Plan, this claim will draw forth an objection. It is, rather, the

94.8% interest on the pre-petition conveyance 8fig endeavors to collect that is meritorious of outrage, especially in the prism of an unsecured transaction.[1]

The optics of 8fig's claim notwithstanding, the Objection is ultimately devoid of merit. The creditor's chief complaints are that (i) the Plan does not specify when creditors will be paid, Objection, DE #82, at ¶ 13; (ii) it is unclear if the claim of 8fig "is disputed in the Plan," *Id.* at ¶ 16;[2] and (iii) the Plan does not sufficiently commit to an express date by which the $30,000.00 in post-petition funds will be tendered back to 8fig, *Id.* at ¶ 17.

What 8fig seems to miss, however, is that (a) the Plan sets forth projections for distributions on a monthly basis; (b) the Plan is express that the Debtor will be objecting to 8fig's claim; and (c) the Plan unambiguously provides for payment of the $30,000.00 on the effective date "or as promptly thereafter as may be pragmatically possible," with such language being in recognition that a disbursing agent may need time to cut checks.

At core, the Objection is simply devoid of merit. The Plan addresses, in plain and accessible language, each qualm of 8fig. And while the creditor may not appreciate that its claim is marked for forthcoming objection, such is an ordinary function of the Chapter 11 process – especially where a creditor is looking for a 94.8% return on monies tendered in the two months preceding the petition date.

## II.    Argument: The Claim of 8fig is for the Honor of a Fraudulent Conveyance

While the Debtor will fully set forth the grounds upon which it objects to the claim of 8fig in a separate filing, there is instantly warranted some review of the anomalous construct of this

---

[1] The Debtor does not dispute the post-petition conveyance of $30,000.00 is a secured claim, nor does the Debtor dispute that such is to be paid to 8fig as soon as the first plan payments are made. The residue of 8fig's claim, however, is unsecured.

[2] The Objection is devoid of a paragraph 14 or a paragraph 15. The citations herein are based on the numerals assigned to the paragraphs in the Objection.

creditor's contentions. 8fig remitted $45,000.00 to the Debtor between November 1, 2022 and December 23, 2022. For this, the entity now claims an entitlement to collect $87,695.07 – a 194.8% return on investment. Yet 8fig insists such is because the monies were not a loan but, rather, a sale of future receivables pursuant to a "Master Future Revenue Purchase Agreement" (the "MFRPA"). In so doing, 8fig seems to miss that the subject characterization would render the entire transaction a classic fraudulent conveyance.

To be sure, there is no known universe in which $45,000.00 is "reasonably equivalent value," 11 U.S.C. § 548(a)(1)(B), for the sale of $87,695.07 in short-term cash receivables. And, equally, there is no question but that the Debtor was insolvent at the time it entered into the MFRPA. So what 8fig suggests is not merely a transaction so utterly shocking to the conscious as to be beyond the purview of this Honorable Court's allowance; the suggestion is, too, of a transaction that is *per se* avoidable under Title 11 of the United States Code (the "Bankruptcy Code").

If 8fig wishes to recharacterize the transaction as a loan (which, of course, is likely how the Debtor viewed the encounter), there may be some argument for the allowance of a claim in the amount of the monies loaned. But, for one reason or another, 8fig declines to do so, instead maintaining that the extension of funds was in furtherance of a scheme prohibited equally by the Statute of Elizabeth, 13 Eliz. 1. c. 5 (1571), and the Bankruptcy Code.

### III.    The Objection is Without Merit

As noted *supra*, there are three core contentions upon which 8fig bases its Objection. Yet each such contention is plainly addressed by the language of the Plan and, accordingly, uncompelling in nature. The Objection is thusly well deserving of being overruled.

3

8fig first protests that "[t]he Plan is vague as it omits any definition of when unsecured, non-priority payments will be made over the stated five year payout timespan…" Objection, DE #82, at ¶ 13. This is peculiar since attached to the Plan, and made a part thereof, is a pro forma that spells out the Debtor's "projected plan distribution" for each calendar month. *See* Plan, DE #76, at Exhibit A. A disbursing agent may ultimately elect to send checks monthly, quarterly, or on such other grounds as the agent, in her or his fiduciary judgment, deems advisable. But the Plan certainly makes clear (a) how much creditors will be receiving; and (b) the Debtor's best projection of when those funds will be made available for disbursement.

The creditor next contends that "[i]t is unclear whether 8fig's unsecured, nonpriority amount of $87,695.00, is disputed in the Plan…" Objection, DE #82, at ¶ 16. This is a curious contention since the Objection, just a few paragraphs earlier, quotes language in the Plan that reads, *inter alia*, "While the Debtor disputes the claim of 8fig, Inc, the Debtor does not dispute $30,000.00 of that claim…" *Id.* at ¶ 9 (quoting Plan, DE #76, at p. 7). It is difficult to understand how this language leaves any ambiguity. But even if, *arguendo*, some doubt remained, the Plan later goes on to observe, *inter alia*:

> The Debtor does not dispute that it owes 8fig, Inc. the sum of $30,000.00 correlative to an errant post-petition transfer of funds by 8fig, Inc., and the Debtor has separately classified that portion of the subject claim. The Debtor will object to the residue of the claim, however, on the basis that such is not cognizable under governing law.

Plan, DE #76, at p. 8, § 5.04(b).

Finally, 8fig argues that the Plan does not sufficiently commit the Debtor to returning $30,000.00 inadvertently conveyed by 8fig post-petition. Objection, DE #82, at ¶ 17. The Plan, in turn, provides, "This $30,000.00 portion of the claim of 8fig, Inc. will be paid, in full, on the Effective Date (or as promptly thereafter as may be pragmatically possible)." Plan, DE #76, at p. 7, § 4, Class 7. If the concern of 8fig is that "pragmatically possible" is some variety of an open-

ended loophole that may used to wreak havoc by retaining funds indefinitely, such seems facially

misplaced. And, equally, the Plan is clear that the payment is to be made on the effective date,

providing for delay only where so dictated by pragmatism. This language is intended to serve no

purpose greater than permitting a disbursing agent a brief modicum of time to ensure initial

payments are properly made, as disbursing agents are wont to do. No doubt, should a delay extend

beyond a matter of weeks computable on the digits of a single hand, 8fig would be well justified

decrying a breach of the Plan.

It is difficult to find merit in any of these grounds of objection. The putative concerns of

8fig, rather, have every appearance of being the pretextual grievances of a party that does not

wish to confront the core incongruity between its business practices and the dictates of the

Bankruptcy Code. Whatever the motivation, though, the Objection certainly ought not stand in

the way of confirmation of a plan that affords ample relief to myriad creditors.

## IV.    Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) overrule the

Objection; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 21, 2023          By:    /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig, Esq.
                                       Bar No. MD18071
                                       The Belmont Firm
                                       1050 Connecticut Avenue, NW, Suite 500
                                       Washington, DC 20036
                                       Phone: (202) 991-1101
                                       mac@dcbankruptcy.com
                                       *Counsel for the Debtor*

*[Certificate of Service on Following Page]*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of August, 2023, a copy of the foregoing was

served electronically upon filing via the ECF system.

<u>/s/ Maurice B. VerStandig</u>
Maurice B. VerStandig